ORIGINAL

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| WILLIAM CHILTON ACORD, | § | |
| **Petitioner,** | § | |
| | § | |
| v. | § | **Civil Action No. 4:12-CV-159-Y** |
| | § | |
| RICK THALER, Director, | § | |
| Texas Department of Criminal Justice, | § | |
| Correctional Institutions Division, | § | |
| **Respondent.** | § | |

<u>**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE
AND NOTICE AND ORDER**</u>

This cause of action was referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b), as implemented by an order of the United States District Court for the Northern District of Texas.  The Findings, Conclusions, and Recommendation of the United States Magistrate Judge are as follows:

## I. FINDINGS AND CONCLUSIONS

### A. NATURE OF THE CASE

This is a petition for writ of habeas corpus by a state prisoner under 28 U.S.C. § 2254.

### B. PARTIES

Petitioner William Chilton Acord, TDCJ #1565371, is a state prisoner in custody of the Texas Department of Criminal Justice, Correctional Institutions Division, in Rosharon, Texas.

Respondent Rick Thaler is the Director of the Texas Department of Criminal Justice, Correctional Institutions Division.

### C. FACTUAL AND PROCEDURAL HISTORY

In 2008 petitioner was charged by indictment with one court of robbery in the 372nd District Court of Tarrant County, Texas. (Clerk's R. at 5) The indictment also included a repeat-offender allegation. (*Id.*) On July 10, 2007, attorney Richard Alley was appointed to represent petitioner in the underlying case in addition to two other pending criminal cases against petitioner. (*Id.* at 11) Counsel moved for, and was granted, appointment of an investigator to assist him in the cases. (*Id.* at 12)

Petitioner was later reindicted on all three offenses and the cases were transferred to the 213th District Court of Tarrant County at counsel's request. (*Id.* at 2, 21, 33-34, 39-40) On October 27, 2008, petitioner was given and signed written plea admonishments and judicially confessed to the robbery charge as alleged in the indictment, after which he entered an open plea of guilty to the offense and a plea of true to the enhancement paragraph. (*Id.* at 54-58; RR at 6) In exchange for his guilty plea, the state agreed to dismiss the two remaining cases against petitioner. (RR at 7)

Petitioner testified at the plea proceeding that he was mentally competent to stand trial on that date, that he was competent on the date of the offense, and that he understood the ramifications of his guilty plea. (RR at 3-4) Petitioner's counsel also stated on the record that petitioner had been able to effectively assist him in his defense "by relating facts, circumstances or events that did transpire" on the date of the offense and that, given his conversations with petitioner, he was of the opinion that petitioner was competent to stand trial and on the date of the offense. (RR at 5-6). The sentencing hearing was continued to the next day, whereupon the state called the victims to testify.

Kelly Meyer testified that on the night of July 5, 2007, she and her daughter, Katelyn, left a Target store in Tarrant County, Texas, around 9:50 p.m. They reached their car, and Katelyn got into

the rear passenger seat, and she got into the driver's seat. Petitioner opened the driver's side door of

the car, told her to "get over," pushed her over onto the console and then the passenger seat, and

entered the driver's seat. Katelyn screamed and jumped out of the car. Petitioner attempted to drive

away, and she struggled with petitioner. Petitioner told her "you are not going anywhere" and

grabbed her shirt, scratching her chest. She escaped from petitioner's grasp and jumped from the

car. Petitioner drove away but was apprehended by the police a short time later. Katelyn testified

similarly. (RR at 10-29) The trial court also admitted the written plea admonishments and a "pen

packet" showing petitioner's prior convictions for robbery and malicious wounding in another state,

appointed Dr. Peter Oropeza, a clinical psychologist, as an expert "mitigation specialist," for the

defense, and continued the case for preparation of a presentence investigation report (PSI) and Dr.

Oropeza's report. (RR at 29-31; Clerk's R. at 60, 64)

   The sentencing hearing reconvened on March 31, 2009. During the hearing, the state moved

the court to take judicial notice of a transcript of the testimony previously given in the case in

October 2008, and both parties stated they had no objections and/or corrections to the PSI. (RR at

32-34) Petitioner's counsel also moved to append to the PSI a copy of the defense's "mitigation

report" prepared by Dr. Peter Oropeza, without objection. (RR at 32-34) Petitioner testified on his

own behalf that, having reviewed both the PSI and Dr. Oropeza's report, no additions or corrections

to the PSI were necessary. (RR at 36-40) He testified that he was not "in the right frame of mind"

on the date of the offense because of his addiction to drugs and alcohol and that he had been up for

eight days drinking, doing crack cocaine, smoking pot and "popping" pills." (RR at 37-38) He

further stated that he was incarcerated in the "MHMR pod" of the Tarrant County jail and had

received MHMR treatment while incarcerated. (RR, vol. 1, at 9-31) Finally, defense counsel argued

for mitigation of punishment based on the psychological evaluation and petitioner's acceptance of responsibility for the offenses. (RR at 41-42) The trial court assessed petitioner's punishment at 45 years' confinement. (Clerk's R. at 82)

The Second District Court of Appeals of Texas affirmed the trial court's judgment, and the Texas Court of Criminal Appeals refused petitioner's petition for discretionary review. *Acord v. State*, No. 2-09-099-CR, slip op. (Tex. App.–Fort Worth Jan. 28, 2010) (not designated for publication); *Acord v. State*, PDR No. 155-10. Petitioner also filed a state application for writ of habeas corpus challenging his conviction, which was denied by the Texas Court of Criminal Appeals without written order on the findings of the trial court. (State Habeas R. at cover)[1] This federal petition for writ of habeas corpus followed.

### D. ISSUES

In two grounds for relief, petitioner claims he received ineffective assistance of trial counsel and abuse of discretion on the part of the trial court. (Pet. at 6; Pet'r Mem. at 1-32)

### E. RULE 5 STATEMENT

Respondent does not believe petitioner's claims are unexhausted, time-barred or successive. (Resp't Answer at 3-4)

### F. DISCUSSION

### 1. *Legal Standard and for Granting Habeas Corpus Relief*

Under 28 U.S.C. § 2254(d), a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court shall not be granted with respect to any claim that was adjudicated

---

[1]"State Habeas R." refers to the record in petitioner's state habeas application no. WR-76,460-01.

4

on the merits in state court proceedings unless he shows that the prior adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. 28 U.S.C. § 2254(d). A decision is contrary to clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court of the United States on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000); *see also Hill v. Johnson*, 210 F.3d 481, 485 (5th Cir. 2000). A state court decision will be an unreasonable application of clearly established federal law if it correctly identifies the applicable rule but applies it unreasonably to the facts of the case. *Williams*, 529 U.S. at 407-08.

The statute further requires that federal courts give great deference to a state court's factual findings. *Hill*, 210 F.3d at 485. Section 2254(e)(1) provides that a determination of a factual issue made by a state court shall be presumed to be correct. The applicant has the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Typically, when the Texas Court of Criminal Appeals denies relief in a state habeas corpus application without written order on the findings of the trial court, as here, it is an adjudication on the merits, which is entitled to this presumption. *Singleton v. Johnson*, 178 F.3d 381, 384 (5th Cir. 1999); *Ex parte Torres*, 943 S.W.2d 469, 472 (Tex. Crim. App. 1997).

## 2. *Ineffective Assistance of Counsel*

A criminal defendant has a constitutional right to the effective assistance of counsel at trial. U.S. CONST. amend. VI. To prevail on an ineffective assistance claim in the context of a guilty plea,

a defendant must demonstrate that his plea was rendered involuntary by showing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's deficient performance, he would not have pleaded guilty and would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 56-59 (1985); *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Smith v. Estelle*, 711 F.2d 677, 682 (5th Cir. 1983). In evaluating an ineffective assistance claim, a court must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance or sound trial strategy. *Strickland*, 466 U.S. at 668, 688-89. Judicial scrutiny of counsel's performance must be highly deferential and every effort must be made to eliminate the distorting effects of hindsight. *Id.* at 689. Strategic choices made by counsel after thorough investigation of the law and facts relevant to plausible options are virtually unchallengeable. *Id.* at 690.

Petitioner claims his trial counsel was ineffective by (A) failing to investigate the viability of an insanity defense, develop mitigating factors, and expose factual inaccuracies in the PSI, and (B) advising him to enter an open plea without "knowledge of the possibility of an insanity defense"; thereby rendering his guilty plea involuntary and depriving him of a fair and impartial trial. (Pet. 6-7a; Pet'r Mem. at 1-23A) According to petitioner, insanity was a valid defense because he was clearly "not in his right mind" at the time of the offense, whether by intoxication or due to his bipolar disorder, and thus a "basis for an insanity defense was available" to counsel. (Pet'r Mem. at 3) He argues, "[o]ne can see that [he] was overcome by the heat, with a combination of dementia from the lack of his medications for Bipolar Disorder, resulting in a loss of sanity at the moment of the offense and which undoubtedly carried on until his housing at the county jail and he was placed on medications." (Pet'r Mem. at 1-10)

6

Petitioner also claims counsel should have been aware of a "factual inaccuracy" in the PSI. Specifically, he argues "[t]he listing [of] his Bipolar Disorder as an Axis II disorder, made it seem as if his polysubstance abuse was his primary disorder, when in fact it was his secondary disorder, to Bipolar Disorder," thus "subvert[ing] the importance of the Bipolar Disorder and it's effects in relation to the instant offense." (Pet. Mem. at 11-16)

Petitioner raised his claims in his state habeas application, and the state habeas court conducted a hearing by affidavit. In his affidavit, counsel Richard Alley, licensed since 1982, responded to petitioner's claims as follows:

> I represented the Applicant as his appointed counsel from the conviction challenged herein. At the same time that I represented the Applicant in this cause I was also appointed by the Court to represent him in several other indictments and reindictments related to but not a part of this conviction.

> I had several meetings with the Applicant and at no time did he express that he was insane at the time of the offense. The Applicant did advise me that he had a bi-polar condition, had not been sleeping for several days before the offenses were committed, and that he had been voluntarily abusing controlled substances heavily prior to the commission of the offenses for which he was charged.

> Prior to entering his plea of guilty I went over with the Applicant repeatedly the State's various plea bargain offers, as well as communicating to the State his counter-offers, and the evidence against him. The Applicant never advised me of any exculpatory or even mitigating witnesses to testify on his behalf. The Applicant advised me that he wanted to talk to the Judge at the punishment phases of his trials on the pending charges. In exchange for his plea of guilty to the amended indictment for robbery the State dismissed the original indictment for robbery and the remaining indictments for Kidnaping, Enhanced and Evading Police with a Vehicle, Enhanced. The offense involved the kidnaping of a woman and her daughter as they entered their vehicle in a parking lot outside a shopping center where they had been shopping. Part of the kidnaping charge involved allegations of intent to commit sexual offenses. The Applicant drove off in the victim's vehicle. Subsequently, the Applicant struck several vehicles in attempting to elude capture by pursuing police cars before he was stopped and arrested. Additional charges, though available, were not filed by the State. At no time did the Applicant act out to me as an insane person or even a mentally incompetent person. For this reason I did not pursue a defense of

7

insanity for either a possible guilt-innocence or penalty trial. The Applicant rejected all plea bargain offers and opted not to go to trial and stated to me that he did not want to go to a jury trial because he knew he was guilty and that a jury would convict him and throw away the key. Nevertheless I fully advised the Applicant of all of the evidence in the possession of the State, the legal consequences and issues pro and con in his cases, and probable outcomes of the available options he had to choose from. The cases were disposed of in according with the Applicant's choice, free of any coercion fro[m] anyone. The Applicant executed written plea admonishments in this case. In addition to written admonishments the Applicant was orally admonished by the Court and undersigned counsel. The Applicant testified at his sentencing and submitted to the Court what he believed to be mitigating evidence.

Originally the Applicant was charged in 3 Indictments assigned to the 371st District Court. I learned that the Court Coordinator of that Court was the very best friend of the alleged victims in the Applicant's indictments. I met in chambers with the Judge of the 371st Court and advised her of that fact and she agreed with me to transfer the cases to another Court for trial. The cases were then assigned to the 213th District Court where no one on that staff had any prior contact or knowledge of the victims in the Applicant's cases. Each of the three Indictments was subsequently reindicted. At the time of the disposition of the plea all 3 of the original indictments were dismissed as were 2 of the reindictments, as part of the Applicant's agreement for the disposition of all of his cases.

I did not represent the Applicant on appeal. However appellate counsel on appeal filed an *Anders* brief certifying the appeal as frivolous. The Court of Appeals allowed appellate counsel to withdraw and affirmed the conviction finding the appeal to be frivolous. A subsequent petition for discretionary review therefrom was recently refused. During my discussions with the Applicant and review of the facts I determined that the Applicant was not insane at the time that he had committed the offense nor was he temporarily insane as a punishment issue. What the Applicant was was a man, drug addicted, violent felon with a violent felony past from another State. The Applicant's bi-polar condition did not affect his ability to know right from wrong or prevent him from assisting counsel in his defense in any way. Confronted with the options of disposal of his case under the law the Applicant chose to enter an open plea and have his punishment decided by the Judge, a position in which I concurred viewing the totality of the circumstances and the overwhelming evidence not only of guilt but also the possible adverse penalty phase evidence available to the State. At the sentencing phase of the trial the State elected not to present all of the prejudicial facts at their disposal against the Applicant.

It should be noted that I did not advise the Applicant to enter an open plea nor compel him to do so. I advised the Applicant of all of his options including pleading Not Guilty, pleading Guilty with the plea bargain offer, and pleading guilty before

or without a jury and having punishment heard regardless of his plea with or without a jury.

It was not until shortly before the disposition of his cases that the Applicant ever expressed any dissatisfaction with counsel and then he was dissatisfied with the plea bargain offer and counsel's inability to get a better one from the State. The trial court heard the Applicant out on the issue, determined that it did not require the withdrawal of counsel and refused to replace counsel. At the time of the plea the Applicant did not express any dissatisfaction with counsel and acknowledged in his testimony that that was how he wanted his case disposed of at that time. When offered the opportunity to testify the Applicant never raised an insanity defense of any kind. In talking with the witnesses and family members that the Applicant identified to counsel; none wanted to come to testify on his behalf in mitigation. Despite that fact the trial court in setting sentence did mitigate the punishment in that he received a sentence of confinement of 45 years and not for Life as I had been expecting.

I reviewed the presentence report with the Applicant who did not inform me of any corrections to be made to it. Prior to the sentencing hearing I had the court appoint a psychologist to try to work up any available mitigating evidence. After obtaining that expert's report I had it offered with the presentence report at the sentencing proceedings and it formed the basis of the defense mitigating evidence and was argued as such by me and considered as such by the Court. It must have had some impact in that the Applicant did not receive the maximum sentence. Nowhere in that psychologist's report was there any indication that the Applicant was insane or even temporarily insane as argued by the Applicant herein. In view of the report being before the Court I opted not to call the psychologist as a witness, where cross-examination might detract from any of the positives expressed in the report insofar as mitigation evidence was presented. In light of the extensive investigation performed I do not believe that I rendered ineffective assistance of counsel in the steps I took therein or as a result thereof in the court proceedings. The allegations in the Applicant's application are untrue, frivolous, and I believe that the requested relief thereon should be denied. . . . .

(State Habeas R. at 84-86)

Based on counsel's affidavit, in conjunction with the state records, the state habeas court

entered the following relevant findings of fact on the issue:

5.    Hon. Alley met with Applicant on several times and Applicant never advised him that he was insane at the time of the offense.

9

6.     Applicant advised Hon. Alley that he had a bi-polar condition.

7.     Applicant advised Hon. Alley that he had not slept for several days before committing the offense.

8.     Applicant advised Hon. Alley that he had voluntarily abused controlled substances heavily prior to committing the offense.

9.     At no time to [sic] Applicant act out or appear as insane or mentally incompetent while in Hon. Alley's presence.

10.    Applicant testified that he was <u>not</u> insane at the time of the offense.

11.    Applicant testified that he just wasn't in control at the time of the offense.

12.    Applicant testified that he didn't remember the entire offense.

13.    Applicant advised the Court that he was competent on the date of the offense and that he understood what the Court meant by "competency."

14.    Hon. Alley advised the trial court that, in his opinion, Applicant was "competent at the time of the offense."

15.    Hon. Alley concluded that Applicant was not insane at the time he committed the offense based on his discussions with Applicant and a review of the facts.

16.    Hon. Alley concluded that Applicant was not temporarily insane at the time he committed the offense.

17.    Hon. Alley concluded that "Applicant's bi-polar condition did not affect his ability to know right from wrong or prevent him from assisting counsel in his defense in any way."

18.    Hon. Alley had Applicant psychologically evaluated by Dr. Peter P. Oropeza, clinical psychologist.

19.    Hon. Alley asked Dr. Oropeza to evaluate whether Applicant's mental health had any effect "regarding the defendant's behavior and legal circumstances."

20.    Dr. Oropeza did not find that Applicant was insane at the time of the offense.

21.    Hon. Alley's decision to not present the defense of insanity, because it would likely not be successful, was the result of reasonable trial strategy.

22.    There is no evidence that Applicant suffered from insanity at the time he committed the offense.

23.     Applicant presents no affidavits or names of person willing to testify on his behalf regarding mitigation.

24.     Hon. Alley spoke with Applicant's family members and none wanted to come testify on his behalf.

25.     Dr. Oropeza's report was presented to this Court for mitigation purposes.

26.     Hon. Alley chose not to call Dr. Oropeza to testify because he determined that cross-examination might detract from any of the positives expressed in the report.

27.     Hon. Alley's decision to not call Dr. Oropeza was the result of reasonable trial strategy.

28.     Hon. Alley argued that the fact that Applicant accepted responsibility for the offense should be considered mitigating.

29.     Based on the facts of this case, Hon. Alley expected Applicant would be sentenced to life and not forty-five years.

30.     Hon. Alley's choice of mitigation evidence was the result of reasonable trial strategy.

31.     Hon. Alley reviewed the pre-sentence report with Applicant.

32.     Applicant did not advise Hon. Alley of any errors in the pre-sentence report.

33.     Hon. Alley advised the Court that he had reviewed the pre-sentence report and he had no objection or corrections to it.

34.     Applicant testified that he and counsel reviewed the pre-sentence report.

35.     Applicant testified that he did not have any additions or corrections to the pre-sentence report.

36.     Dr. Oropeza's report included information that Applicant was first treated for mental disorder in 1993 or 1995.

37.     Applicant admits that the pre-sentence investigation report indicates that Applicant was diagnosed by Tarrant County with bi-polar disorder on October 27, 2007 and that he had a history of bi-polar disorder.

38.     There is no evidence that the pre-sentence report contained factual inaccuracies.

39.  There was sufficient evidence before this Court that Applicant had been diagnosed and treated, for mental disorder prior to the date of the offense.

40.  Prior to Applicant's plea, Hon. Alley went over the State's plea offers and the evidence with Applicant repeatedly.

41.  Hon. Alley communicated all counter-offers to the State.

42.  Hon. Alley advised Applicant of all the evidence against him, the legal consequences and issues in his cases, and the probable outcomes of all available options.

43.  Applicant decided he did not want a jury trial because he knew he was guilty and that the jury would give him a long sentence.

44.  Applicant chose not to go to trial and rejected all the State's offers.

45.  Applicant advised Hon. Alley that he wanted to talk to the judge at the punishment phase.

46.  In exchange for his open plea of guilty, the State dismissed the other charges against Applicant.

47.  Hon. Alley recalls that Applicant chose to plead open to the trial court freely.

48.  Applicant was admonished in accordance with article 26.143 of the Texas Code of Criminal Procedure.

49.  Applicant acknowledged by his signature that he fully understood the Court's admonishments.

50.  Applicant acknowledged by his signature that he was aware of the consequences of his plea.

51.  Applicant acknowledged by his signature that he was mentally competent.

52.  Applicant acknowledged by his signature that his "plea [was] knowingly, freely, and voluntarily entered."

53.  Applicant advised the Court that his plea was "freely and voluntarily given."

54.  Applicant advised that he did not want to change his mind and still wanted to plead guilty after being orally admonished by the Court.

55.  Applicant was fully admonished by the Court.

56. Applicant clearly indicated his desire to plead guilty to the Court.

57. Applicant presents no evidence to support his claim that Hon. Alley's advice regarding his pleading open to the trial court was improper.

58. Hon. Alley's affidavit is credible and supported by the record.

(State Habeas R. at 89-93) (citations to the record omitted)

Based on its findings, and applying the *Strickland* standard and applicable state law, the state habeas court made the following relevant legal conclusions:

7. "(a) It is an affirmative defense to prosecution that, at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong."

(b) The term "mental disease or defect" does not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct.

8. "Texas law, like that of all American jurisdictions, presumes that a criminal defendant is sane and that he intends the natural consequences of his acts.

9. Texas does not recognize diminished capacity as an affirmative defense lesser than insanity.

10. Applicant has failed to prove that he did not know that his conduct was wrong at the time of the offense.

11. Applicant has failed to prove that he was suffering from insanity at the time he committed the offense.

12. Applicant has failed to prove that counsel should have investigated the defense of insanity more.

13. Counsel's decision to not present the defense of insanity was the result of reasonable trial strategy.

14. Applicant has failed to prove that there were mitigating factors that counsel should have presented on his behalf.

15. Applicant has failed to prove that counsel failed to properly develop mitigating factors.

16.     Applicant has failed to prove that the fact that he was diagnosed with bi-polar disorder on October 27, 2007 was a factual inaccuracy to which counsel should have objected.

17.     Applicant has failed to prove that counsel was not aware of the defense of insanity at the time of Applicant's plea.

18.     Applicant has failed to prove that counsel improperly advised him to plead open to the trial court.

19.     Applicant has failed to prove that counsel failed to properly investigate the pre-sentence report.

20.     Applicant has failed to prove that his attorney's representation fell below an objective standard of reasonableness.

21.     A party fails to carry his burden to prove ineffective assistance of counsel where the probability of a different result absent the alleged deficient conduct sufficient to undermine confidence in the outcome is not established.

22.     Applicant has failed to show that there is a reasonable probability that the outcome of the proceeding would have been different had counsel presented an insanity defense.

23.     Applicant has failed to show that there is a reasonable probability that there were additional mitigation factors which would have affected the outcome of the proceeding.

24.     Applicant has failed to show that there is a reasonable probability that the outcome of the proceeding would have been different had counsel developed more mitigating factors.

25.     Applicant has failed to show that there is a reasonable probability that the outcome of the proceeding would have been different had counsel reviewed the pre-sentence investigation report more thoroughly.

26.     Applicant has failed to show that there is a reasonable probability that, but for the alleged acts of misconduct, the result of the proceeding would be different.

27.     Applicant has failed to prove that he received ineffective assistance of counsel.

(*Id.* 96-98) (citations omitted)

In turn, the Texas Court of Criminal Appeals denied relief based upon the habeas court's findings. This constitutes an adjudication on the merits of the claims, including credibility determinations, and is entitled to the presumption of correctness. 28 U.S.C. § 2254(e)(1); *Richards v. Quarterman*, 566 F.3d 553, 563 (5th Cir. 2009). Petitioner has failed to present clear and convincing evidence in rebuttal of the state court's findings or demonstrate that the state courts' adjudication of his ineffective assistance claims is objectively unreasonable under *Strickland*.

The record of the plea proceedings in this case does not support petitioner's assertion that his plea was rendered involuntary as a result of counsel's conduct. The reporter's record in conjunction with the documentary records reflect that petitioner entered his guilty plea voluntarily in open court and was advised by counsel and the trial court of his rights, waivers, and the full range of punishment for the offense. (Clerk's R. at 54; RR at 2-6) Petitioner executed the written plea admonishments in which he acknowledged that he understood the admonishments, was aware of the consequences of his plea, and that his plea was knowingly, freely and voluntarily entered. (Clerk's R. at 54; State Habeas R. at 92) *See Blackledge v. Allison*, 431 U.S. 63, 74 (1977); *Kelley v. Alabama*, 636 F.2d 1082, 1084 (5th Cir. 1981). Further, petitioner judicially confessed to committing the offense as charged in the indictment and true to the repeat offender allegation. *See Blackledge*, 431 U.S. at 74; *Kelley*, 636 F.2d at 1084. Such representations by a defendant during plea proceedings carry a strong presumption of verity. *Blackledge*, 431 U.S. at 74.

Moreover, petitioner has not stated a persuasive argument in support of a viable insanity defense. Under Texas law, an insanity defense is available if, "at the time of the conduct charged, the actor, as a result of severe mental disease or defect, did not know that his conduct was wrong." TEX. PENAL CODE ANN. § 8.01(a) (Vernon 2011). Voluntary intoxication resulting from the consumption or use of alcohol and/or controlled substances is not a defense to the commission of

a crime. *Id. § 8.04(a)*. Thus, an insanity defense based on voluntary intoxication is not allowed. *Mendenhall v. State*, 77 S.W.3d 815, 817-18 (Tex. Crim. App. 2002). Nor is there any evidence that petitioner suffered from insanity at the time of the offense as a result of his bipolar disorder. Petitioner's conclusory allegations do not entitle him to habeas relief. *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000).

While it is true that an attorney must engage in a reasonable amount of pretrial investigation, the record reflects counsel obtained a court-appointed investigator and clinical psychologist to investigate the matter of petitioner's mental health and was aware of petitioner's bipolar disorder. There was also an abundance of evidence that petitioner had a substance abuse problem at the time of the offense, but nothing to suggest, or cause counsel to believe, that petitioner's mental state when he committed the offense rose to the level of insanity, and petitioner admitted to being competent when he committed the offense. (RR at 5) Because the facts do not support an insanity defense, counsel was not deficient for failing to further investigate and pursue the defense, and it necessarily follows that petitioner's guilty plea was not rendered involuntary on this basis. A reasonable attorney could have made a strategic choice not to pursue a defense that had no evidentiary basis. Counsel's strategy was to be forthcoming about the offense, petitioner's criminal history, his substance abuse problem, and his diagnosis and treatment for bipolar disorder, in an effort to mitigate punishment, which was a sound trial strategy given the fact that petitioner had already voluntarily pleaded guilty to the offense and true to the repeat offender notice.

Petitioner's claim that counsel was ineffective by failing to "expose factual inaccuracies" in the PSI also fails. At the sentencing hearing, petitioner admitted that counsel reviewed the PSI with him and agreed that he did not have any additions or corrections to the report. (RR at 37) Petitioner was given the opportunity to point out and explain any material inaccuracies in the PSI at that time.

### 3. *Trial Court Error*

Petitioner claims the trial court abused its discretion by failing to hold an inquiry into his complaints against court-appointed counsel and denying his motion to replace counsel. (Pet. at 6-7a; Pet'r Mem. at 24-32) The record reflects petitioner filed a letter and "Declaration of Conflict Between Attorney and Client and Motion for Substitution of Appointed Counsel" in the trial court on October 27, 2008, and filed a request to resolve his complaints with the Client-Attorney Assistance Program with the State Bar of Texas. (Clerk's R. at 44-49)

The state habeas court entered the following relevant findings of fact regarding the issue:

59.   Applicant alleged that there was a conflict between his attorney and himself for the following reasons: (1) counsel failed to request a change of venue out of the 371st Court; (2) counsel failed to file non specific *pro se* motions; (3) counsel failed to visit him or talk to him on the phone more than once; (4) counsel's investigator failed to talk to Applicant in person, by phone, or by letters; (5) counsel failed to acquaint himself with the facts of the case or the fact that Applicant is an MHMR patient; (6) counsel refused to return Applicant's letters or calls.

60.   This case was transferred out of the 371st District Court of Tarrant County on March 20, 2008.

61.   Hon. Alley asserts that the case was transferred out of the 371st District Court on his request.

62.   Applicant did not allege what *pro se* motions counsel failed to file.

63.   There is no evidence that Applicant ever advised the trial court of what *pro se* motions he wanted counsel to file.

64.   Hon. Alley requested an investigator to "interview all witnesses, review, obtain, copy and compile records that he, she or they may deem necessary and seek evidence wherever it may be located either tangible or testamentary and from whatever sources may arise."

65.   It is reasonable that Hon. Alley's investigator, Fred Pendergraf, did not talk to Applicant because Hon. Alley did not require him to do so.

66.   The fact that Hon. Alley did not utilize Fred Pendergraf's time and resources to interview Applicant is not evidence of conflict.

67.    Hon. Alley was appointed a consulting psychologist on October 28, 2008.

68.    Hon. Alley assigned Fred Pendergraf to interview witnesses in reference to medical treatment Applicant received.

69.    The fact that Hon. Alley had the case transferred out of the 371st District Court was evidence that Hon. Alley was acquainted with the facts of the case.

70.    The fact that Hon. Alley had a consulting psychologist appointed and assigned his investigator to interview witnesses regarding Applicant's medical treatment is evidence that Hon. Alley was aware of Applicant's MHMR status.

71.    During his representation of Applicant, and prior to his filing his Declaration of Conflict on October 27, 2008, Hon. Alley had (1) met with Applicant during trial settings; (2) sent Applicant at least twenty-one letters; and (3) spoken by telephone with Applicant's family members on at least four occasions.

72.    Applicant presents no evidence to show that, at the time of his declaration of conflict, there was adequate cause for the trial court to appoint new counsel.

73.    Applicant presents no evidence to support his claim that the trial [court] failed to inquire into the reasons why Applicant was dissatisfied with counsel's representation.

74.    Applicant presents no evidence to support his claim that the trial court improperly forced Applicant to proceed to trial with ineffective counsel.

75.    Hon. Alley recalls that the trial court gave Applicant an opportunity to express his dissatisfaction with counsel and ultimately found that the issue did not require withdrawal of counsel or appointment of new counsel.

76.    Applicant advised the Court that he understood his rights.

77.    Applicant advised the Court that Hon. Alley explained everything to him and that he had no questions.

78.    Applicant advised the Court that he didn't think anything the Court discussed with him made him want to change his mind about his plea; however, that he may have questions for "Mr. Alley later on."

79.    Applicant acknowledged by his signature on October 28, 2008, that he was "totally satisfied with the representation given to [him] by [his] attorney."

80.     Applicant acknowledged by his signature on October 28, 2008, that "[his] attorney provided [him] fully effective and competent representation."

81.     Applicant acknowledged by his signature that he was giving up and "waiv[ing] all pretrial motions that may have been filed in connection with [his] case."

82.     Applicant advised the Court that he was aware of the contents of the plea papers.

83.     At no time during his interactions with the Court did he express that he was dissatisfied with counsel.

84.     At no time during his interactions with the Court did he express the desire for new counsel.

85.     Applicant was given adequate opportunity to complain about his attorney during the plea proceedings.

(State Habeas R. at 93-95) (citations to the record omitted)

Based on its findings, and applying applicable state law, the state habeas court made the following relevant legal conclusions:

29.     A right to counsel does not compel the trial court to appoint counsel agreeable to the accused.

30.     On the contrary, a "defendant must accept counsel assigned by the court unless he effectively waives right to counsel in order to represent himself . . . or can show adequate cause for appointment of a different attorney."

31.     In a habeas corpus proceeding, the burden of proof is on the applicant.

32.     Applicant has failed to prove that the trial court did not give him a proper opportunity to show adequate ca[u]se for appointment of different counsel.

33.     Applicant has failed to prove that he demonstrated to the trial court adequate cause for appointment of different counsel.

34.     Applicant has failed to prove that adequate cause existed for an appointment of new counsel.

35.     Applicant has failed to prove that the trial court deprived him of his right to a fair trial by not appointing him new counsel.

(State Habeas R. at 98) (citations omitted)

The Texas Court of Criminal Appeals denied relief based upon the habeas court's findings, which, as previously noted, constitutes an adjudication on the merits of the claims and is entitled to the presumption of correctness. 28 U.S.C. § 2254(e)(1). Petitioner has failed to present clear and convincing evidence in rebuttal of the state court's findings or demonstrate that the state courts' adjudication of the claim is objectively unreasonable under Supreme Court precedent.

Assuming, without deciding, that this claim was not waived as a result of petitioner's guilty plea, petitioner voiced no concern or objection relative to counsel's representation at the plea or sentencing hearings held before the trial court; thus it is reasonable the trial court concluded any potential conflict had been resolved and no longer existed at the time of the plea proceedings, during which petitioner expressed satisfaction with counsel's representation. Furthermore, it is necessary for a petitioner to establish, at a minimum, that an actual conflict existed and that the conflict adversely affected his counsel's performance. *Michkens v. Taylor*, 535 U.S. 162, 173-74 (2002); *Cuyler v. Sullivan*, 446 U.S. 335, 348-49 (1980). Petitioner has failed to make such a showing.

### 4. Evidentiary Hearing

Petitioner requests an evidentiary hearing for purposes of further developing the record in support of his claims. 28 U.S.C. § 2254(e)(2). However, the recent Supreme Court case *Cullen v. Pinholster* made clear that federal habeas review under the deferential 28 U.S.C. § 2254(d)(1) standard applicable to claims adjudicated on the merits in state-court proceedings is limited to the record before the state court. *Cullen*, — U.S. —, 131 S. Ct. 1388 (2011).

## II. RECOMMENDATION

Petitioner has failed to satisfy the legal standard for habeas corpus relief set forth above, and his petition for writ of habeas corpus should be denied.

### III.  NOTICE OF RIGHT TO OBJECT TO PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

A copy of this report and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 10 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The court is extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation until August 31, 2012.  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

### IV.  ORDER

Under 28 U.S.C. § 636, it is ordered that each party is granted until August 31, 2012, to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions, and recommendation.  It is further ordered that if objections are filed and the opposing party chooses to file a response, a response shall be filed within seven (7) days of the filing date of the objections.

It is further ordered that the above-styled and numbered action, previously referred to the United States Magistrate Judge for findings, conclusions, and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED August ___/0___, 2012.

JEFFREY L. CURETON
UNITED STATES MAGISTRATE JUDGE